# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

ROBERT JULIAN-BORCHAK WILLIAMS,

        Plaintiff,

v.

CITY OF DETROIT, a municipal corporation,
DETROIT POLICE CHIEF JAMES WHITE,
in his official capacity, and DETECTIVE
DONALD BUSSA, in his individual capacity,

        Defendants.

_____/

Case No. 21-cv-10827

Hon. Laurie J. Michelson

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION AND BRIEF FOR MENTAL EXAMINATION OF PLAINTIFF**

Michael J. Steinberg (P43085)
Ben Mordechai-Strongin*
Lauren Yu*
William Ellis*
Mickey Terlep*
Julia Kahn*
Civil Rights Litigation Initiative
  University of Michigan Law School
701 S. State St., Suite 2020
Ann Arbor, MI 48109
(734) 763-1983
mjsteinb@umich.edu
bmstrong@umich.edu
laurenyu@umich.edu
wwellis@umich.edu
mterlep@umich.edu
jekahn@umich.edu

* Student Attorney practicing pursuant to
Local Rule 83.21.

Philip Mayor (P81691)
Daniel S. Korobkin (P72842)
Ramis J. Wadood (P85791)
American Civil Liberties
  Union Fund of Michigan
2966 Woodward Ave.
Detroit, MI 48201
(313) 578-6803
pmayor@aclumich.org
dkorobkin@aclumich.org
rwadood@aclumich.org

Nathan Freed Wessler
American Civil Liberties
  Union Foundation
125 Broad Street, 18th Floor
New York, New York 10004
(212) 549-2500
nwessler@aclu.org

_____/

## <u>STATEMENT OF ISSUES PRESENTED</u>

1. Should this Court order Plaintiff to submit to a mental health exam when Defendants failed to timely seek or move for such an exam before the discovery cutoff?

**<u>Plaintiff's Answer:</u>** No.

**<u>Defendants' Answer:</u>** Yes.

## <u>MOST RELEVANT OR CONTROLLING AUTHORITY</u>

*Miksis v. Howard*, 106 F.3d 754 (7th Cir. 1997)

Federal Rule of Civil Procedure 16

Federal Rule of Civil Procedure 35

## <u>PLAINTIFF'S BRIEF IN RESPONSE TO DEFENDANTS' MOTION FOR MENTAL HEALTH EXAMINATION OF PLAINTIFF</u>

### <u>INTRODUCTION</u>

Defendants should not be rewarded for their latest failure to diligently litigate their defense. During a limited extension of discovery meant solely for Defendants to respond to Plaintiff's outstanding requests, Defendants belatedly and improperly sought to have Plaintiff analyzed by a doctor without a warning, limitation in scope, or even a citation to Federal Rule of Civil Procedure 35. Defendants' request, however, was too-little-too-late. Independent medical examinations under Rule 35 are specifically within the ambit of fact discovery. Courts typically only diverge from requiring Rule 35 medical examinations to take place during the fact discovery period where a party, through no fault of their own, is sincerely surprised to learn *after* the close of fact discovery that mental or physical health is at issue. Defendants were on notice since day one that Plaintiff's mental health would be an issue in this case, and have known about his PTSD diagnosis since deposing him in October 2022, five months before the March 10 cutoff for regular fact discovery. Because fact discovery was closed to new requests when Defendants sent their medical evaluation demand to Plaintiff's counsel, and because Defendants were long aware Plaintiff's mental health was at issue, Plaintiff asks this Court to deny Defendants' motion.

## STATEMENT OF FACTS

Defendants' motion to compel a belated medical examination is just the latest example of Defendants' inexcusable discovery delays in this case. During the 21 months since the original scheduling order in this matter, ECF No. 14, PageID.208 (Aug. 16, 2021), the Court has been required to hold five status conferences to settle discovery disputes, *see* ECF Nos. 9, 34, 37, 39, & 40, and the parties have stipulated to extend the discovery deadline six times. ECF Nos. 17, 30, 33, 36, 38, & 41. Plaintiffs sought or agreed to each of these discovery extensions because of Defendants' repeated delays in producing documents or deponents.

Yet despite these extensions and the many months of additional discovery they provided, Defendants chose not to seek an independent medical examination ("IME") until March 21, 2023—11 days after the agreed-upon end to new discovery requests and months after Defendants were made aware of Mr. Williams' PTSD diagnosis. Furthermore, even the March 21 request for an IME was not procedurally proper. Rather than serving a discovery request upon Plaintiff or seeking Plaintiff's consent, Defendants caused a third-party medical provider to send an email to counsel for Plaintiff demanding that Mr. Williams appear for a medical exam of unspecified scope. ECF No. 43-2, PageID.892–893. Counsel for Defendants did not contact counsel for Plaintiffs (or this Court) about the requested examination in any form.

Plaintiff seeks to clarify two important facts that Defendants distort (at best) in their motion. First, fact discovery was not "open through April 10, 2023," as Defendants misleadingly claim in their motion and brief. ECF No. 43, PageID.842. Much to the contrary, the regular fact discovery period ended on ***March*** 10. As was discussed extensively at the March 3 and April 7 status conferences, this Court extended the discovery period from March 10 to April 10 for the limited purpose of affording additional time for Defendants to resolve outstanding discovery requests—not to make unlimited new discovery requests. In fact, during the March 3 conference, counsel for Defendants sought leave to make additional discovery requests during the extended discovery period. This Court granted leave for additional discovery requests between March 10 and April 10 *only* if such requests were related to the discovery that was ordered to be produced by Defendants at the March 3 conference. During the April 7 status conference, this Court confirmed this understanding of the fact discovery deadlines.

Defendants have not taken the position that the belated request for an IME is related to this outstanding discovery—nor can they. The outstanding discovery still at issue after March 10 was all related to the municipal defendants' liability under *Monell*, not to Plaintiff's medical diagnoses or damages. *See* Ex. A (3/6/2023 email memorializing list of outstanding discovery following March 3 conference).

Further, Defendants have known that Mr. Williams's mental health was at issue since initiation of this lawsuit, that Mr. Williams intended to engage his own expert for a psychological examination since September 2021, and that Mr. Williams has been diagnosed with PTSD since October 2022.

Plaintiff first put his mental health at issue on day one of this lawsuit in his Complaint, as Defendants recognize. *See* Compl., ECF No. 1, PageID.61; Br. in Support of Defs.' Mot., ECF No. 43, PageID.843. That Plaintiff's mental health was in contention only got clearer as this case progressed. In Plaintiff's September 1, 2021, Initial Disclosures, he included under the section titled "Initial Anticipated Areas of Expert Testimony" an expected "Psychological Evaluation of Robert Williams." Ex. B at 6. Most importantly, Mr. Williams testified to his PTSD diagnosis during his October 27, 2022, deposition, where Defendants' counsel asked "Has anyone ever diagnosed you with PTSD [related to this matter]?" and Mr. Williams responded "Yes." Ex. C at 32. *See also id.* at 31 ("Q [from Mr. Cunningham]: What injuries did you suffer? A [from Mr. Williams]: The PTSD . . . ."). Mr. Williams reconfirmed that diagnosis in his timely February 7, 2023, responses to Defendants' interrogatories. ECF No. 43-1, PageID.857, 858, 888.

Despite being on clear notice of Mr. Williams's mental health diagnosis for months, Defendants waited to request an IME until after the March 10 fact discovery deadline. And even then, Defendants did not even follow the basic

requirements for IME requests as laid out in Federal Rule of Civil Procedure 35.

A medical evaluation group (not Defendants' counsel), sent Plaintiff's counsel a

letter demanding that Mr. Williams appear in Ann Arbor (about 40 minutes from

his home) on April 10 for a medical examination of an unspecified scope. ECF No.

43-2, PageID.893. It was not until Defendants' counsel sent a "Stipulated Order for

Mental Health Examination" on April 12, 2023, that it became clear that the scope

of the examination was limited to Mr. Williams's mental health (a scope that is still

unreasonably broad). ECF No. 43-3, PageID.894. After considering that

stipulation, Plaintiff's counsel notified counsel for Defendants that they could not

agree to the request. ECF No. 43-4, PageID.896. Defendants' instant motion,

invoking Rule 35, followed.

## **STANDARD OF REVIEW**

Conducting IMEs is strictly within the ambit of fact discovery. *See, e.g.*,

*Miksis v. Howard*, 106 F.3d 754 (7th Cir. 1997). Defendants are effectively moving

this Court to reopen fact discovery, which may only be done for "good cause and

with the judge's consent." Fed. R. Civ. P. 16(b)(4). "'The primary measure of Rule

16's "good cause" standard is the moving party's diligence in attempting to meet

the case management order's requirements,' though courts may also consider

prejudice to the nonmoving party." *Smith v. Holston Med. Grp., P.C.*, 595 F. App'x

474, 478 (6th Cir. 2014) (quoting *Inge v. Rock Fin. Corp.,* 281 F.3d 613, 625 (6th Cir. 2002)).

Federal Rule of Civil Procedure 35 allows for a medical evaluation of an opposing party, "provided, of course, that the other requirements of the Rule [a]re met." *Schlagenhauf v. Holder*, 379 U.S. 104, 116 (1964).

## ARGUMENT

Defendants should not be allowed to proceed with an untimely medical evaluation of Mr. Williams. The medical evaluation—which is squarely fact discovery and not expert discovery—was requested after the close of regular fact discovery and many months after Mr. Williams's PTSD was made known to Defendants. There is simply no explanation for Defendants' delay that warrants reopening fact discovery.

### A.   The IME request should be rejected as untimely because it came after the close of regular fact discovery.

The issue of Defendants' belated request for an IME was discussed with this Court at an April 7 status conference. This Court explained that it agreed with Plaintiff that March 10 marked the end of new fact discovery requests—such as this IME request—unless the new discovery was directly related to outstanding fact discovery requests. However, the Court reserved decision on the legal question of whether an IME must typically occur as part of fact discovery, or whether it is part of expert discovery. This question has been answered by multiple courts:

6

"[t]he greater, more persuasive weight of authority establishes that Rule 35 examinations must take place before the fact discovery deadline." *In re 3M Combat Arms Earplug Products Liab. Litig.*, No. 3:19-MD-2885, 2020 WL 8617623, at *2 (N.D. Fla. Dec. 4, 2020) (collecting cases); *see also* 8B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2234 (3d ed. 2015) ("*Except for the discovery cutoff*, there is no time limit on when a motion for a physical or mental examination can be made.") (emphasis added).

The sole circuit court to address the propriety of a district court's denial of an IME request that came after the close of fact discovery upheld the district court's order denying the request. In *Miksis v. Howard*, the Seventh Circuit found that the "proper" period for a medical exam is during fact discovery, not expert discovery. 106 F.3d 754, 759 (7th Cir. 1997). The court explained that where "[d]efendants knew from day one that plaintiff's medical condition was an issue," but failed to request an IME until after fact discovery closed, the district court acted appropriately in denying defendants' requests for a Rule 35 exam or to alternatively reopen discovery to schedule a medical examination. *Id*. at 760.

The procedural posture of *Miksis* is strikingly similar to the circumstances in this case. The defendants in *Miksis*, a truck company, claimed they were "sandbagged" by plaintiff's claims about his poor health. *Id*. at 758. The Seventh Circuit recognized, however, that the complaint made obvious the serious health

issues in controversy. *Id*. Throughout discovery, the truck company was consistently dilatory. The company's delays resulted in four discovery extensions. *Id*. During the third extension period, the truck company deposed the plaintiff's doctor who, one month before the truck company moved for a Rule 35 exam, detailed the plaintiff's serious medical issues. *Id*. A fourth discovery extension was later granted, but was limited solely to issues unrelated to plaintiff's health. *Id*. During this limited extension of the fact discovery period, and a month after deposing the doctor, the truck company moved for a Rule 35 examination. *Id*. The court noted that any surprise claimed by the defendants about the medical condition being at issue was solely the fault of the defendants, and that it was appropriate to deny the defendants' requests in light of their lack of diligence. *Id*. at 758–61; *accord Spencer Med. Assocs. v. C.I.R.*, 155 F.3d 268, 273 (4th Cir. 1998) (citing favorably the timeliness analysis in *Miksis*). *See also, e.g.*, *Doe v. Town of Hopkinton*, No. 14-cv-13224, 2016 WL 6905373, at *1 (D. Mass. Nov. 23, 2016) (denying post–discovery-cutoff motion for IME because Defendants failed to demonstrate good cause for their delay); *Briesacher v. AMG Res., Inc.*, No. 2:03-cv-331, 2005 WL 2105908, at *1–2 (N.D. Ind. Aug. 31, 2005) (same); *Manguson v. Jackson*, No. 11-cv-561-CVE-PJC, 2012 WL 2061919, at *2 (N.D. Okla. June 5, 2012) (same).

The factual circumstances here are, in fact, even more egregious than *Miksis*. In *Miksis*, the dilatory defendant learned of the plaintiff's medical diagnosis just one month before their Rule 35 motion. Here, by contrast, Defendants were aware, via deposition, of Plaintiff's PTSD diagnosis for approximately five months by the time they made their March 21 demand that Mr. Williams appear for a medical examination. Even then the demand was not a proper discovery request but came in the form of an email from a third-party medical examiner demanding that Plaintiff appear for a medical examination of unspecified scope. ECF No. 43-2, PageID.892–893. Just as in *Miksis*, here this Court extended fact discovery for the limited purpose of allowing resolution of outstanding issues that were attributable to the defendants' dilatory conduct. And just as in *Miksis*, the limited scope of the discovery extension in this case had nothing to do with Plaintiff's health. Thus, Defendants' request is untimely.

It is of no import to this dispute that expert discovery remains open. Expert discovery is limited to discovery regarding the "opinions to be expressed [in expert testimony] and the basis and reasons therefore." *Sparton Corp. v. United States*, 77 Fed. Cl. 10, 15 (2007). In other words, expert discovery is limited to uncovering documents experts relied on in formulating their opinion and to depositions of experts. Explaining why a request for documents that a party sought in order to inform their expert's opinion was untimely when the request was made during the

expert discovery period, rather than during fact discovery, the Court of Federal Claims held that "[a]lthough such documents may contain factual information upon which expert opinions may be rendered, the documents themselves do not constitute expert discovery." *Id*. Rather, "based on the design of the Federal Rules of Civil Procedure, there is an apparent presumption that data for an expert report should be gathered during fact discovery and that the extended deadline for the expert report is provided to give the expert time to thoroughly analyze the collected data." *Henry v. Quicken Loans, Inc.*, No. 04-40346, 2008 WL 4735228, at *6 (E.D. Mich. Oct. 15, 2008), *aff'd*, 2009 WL 3199788 (E.D. Mich. Sept. 30, 2009).

"Much of the information produced during 'fact discovery' is used as a foundation for expert opinions," *Ruiz-Bueno v. Scott*, No. 2:12-cv-0809, 2014 WL 576400, at *3 (S.D. Ohio Feb. 12, 2014), which is why, when fact and expert discovery deadlines are set separately, it is important to keep the distinction clear. "It would make little sense to have separate cutoff dates for fact and expert discovery if discovery of any information which might form the basis for expert opinions could be deferred to the 'expert discovery' phase" because expert discovery "would then turn out to be more extensive, and it would be very difficult to determine when discovery was really concluded." *Id*.

Here, as in *Miksis,* Defendants request an IME under Federal Rule of Civil Procedure 35. ECF No. 43, PageID.841 (identifying Rule 35 as the most

10

controlling authority); *id.* at PageID.843 (laying out the standard of review for

Rule 35). As a result, Defendants' IME request was limited by the relevant fact

discovery cutoff (in this case, March 10). Because it came after that cutoff, this

Court should reject Defendants' request as untimely.

### B. The IME request should be rejected as dilatory because it came months after Defendants were on notice of Plaintiff's PTSD diagnosis.

Defendants do not—and cannot—explain why their request for a mental

health examination came five months after Mr. Williams himself testified that he

had been diagnosed with PTSD. *See* Ex. C, at 31–32. Without an adequate

explanation, Defendants cannot be allowed to proceed with a medical examination

after the close of regular fact discovery.

When courts have granted post-discovery Rule 35 examinations, they have

typically done so based on "findings that the need for an IME was unforeseeable

prior to the fact discovery deadline or that the movant's delay in seeking an IME

was otherwise reasonable under the circumstances." *Stanbro v. Palou,* No. 20-cv-

1591*,* 2021 WL 4176255, at *1 (S.D.N.Y. Sept. 14, 2021). In *Stanbro*, for example,

because the defendants were unable to "put forth an adequate explanation

justifying their delay in requesting an IME" despite "the need for an IME [being]

foreseeable," the Court denied defendants' motion seeking an order to conduct an

IME after the fact discovery cutoff. *Id*. at *2. The court was aware that its denial of

defendants' motion would likely disadvantage defendants' experts, but still denied it as untimely. *See id.*; Defs.' Ltr. Br., *Stanbro*, No. 20-cv-1591 (S.D.N.Y. filed Aug. 26, 2021) (ECF No. 87). *See also Balzer v. Am. Family Ins. Co.*, No. 2:08-cv-241, 2010 WL 1838431 (N.D. Ind. May 6, 2010) (denying permission for an IME to be taken where defendant simply let the fact discovery deadline pass and was already on notice that mental health damages were on the table).

Here, Plaintiff's PTSD diagnosis was made known to Defendants well before the close of fact discovery. Mr. Williams stated unambiguously in his October 27, 2022, deposition that he had been diagnosed with PTSD. Ex. C at 31–32. He again disclosed his PTSD diagnosis throughout his February 2023 responses to Defendants' first set of interrogatories.[1] ECF No. 43-1, PageID.857, 858, 888. And neither of these admissions should have come as a surprise, as Mr. Williams very clearly put his mental health at issue in his complaint and initial disclosures. *See supra*.

---

[1] Even had Defendants not learned of Mr. Williams's PTSD diagnosis in his October 2022 deposition—which, of course, they did—their IME request would still be untimely because it was made more than a month and a half after Mr. Williams's timely response to Defendants' interrogatories. Aside from the notice of Mr. Williams's deposition in fall of 2022, Defendants did not issue *any* discovery requests to Plaintiff until January 6, 2023 (nearly 17 months after this Court's order setting initial discovery deadlines, ECF No. 14, PageID.208, and after the third discovery extension in this case, ECF No. 33). Plaintiff timely responded to Defendants' discovery requests on February 7, 2023, more than a month before the cutoff for regular fact discovery on March 10, 2023.

Defendants seek support for their motion based solely on unreported orders in *Cessante v. City of Pontiac*, No. 08-cv-10497, 2009 WL 1586553, at *2 (E.D. Mich. June 4, 2009), and *S.R. v. Kenton County Sheriff's Office*, No. 15-143-WOB-CJS, 2018 WL 11420453, at *2 (E.D. Ky. Feb. 12, 2018). *See* ECF No. 43, PageID.844–845. However, *Cessante* and *S.R.* actually support Plaintiff's position, not Defendants'.

In *Cessante*, the Court *did* find that "the discovery deadline applies to discovery under Rule 35." 2009 WL 1586553, at *2. The court granted the defendants motion to extend the discovery deadline to allow examination by defendants' expert, but only "due to the . . . Defendants' showing that the posttraumatic stress disorder was raised *for the first time* in the expert report and necessitates rebuttal." *Id.* (emphasis added). Defendants can make no similar argument here, where they were on notice since at least October 27, 2022 about Plaintiff's PTSD diagnosis; where they could have learned of the diagnosis even earlier had Defendants been more diligent with their discovery requests; and where they knew from the earliest stages of this case that Plaintiff's mental health was at issue and that Plaintiff intended to deliver expert testimony on the matter.

The ruling in *S.R.* is also not on point. There, the court entertained and granted a request for a *second* mental health examination after the close of fact discovery, in order to update the findings of an initial examination timely

13

conducted during the fact discovery period. *S.R.*, 2018 WL 11420453, at *1–3. The court's analysis nowhere addresses timeliness (aside from recognizing the significant time lapse between the first and requested second examination). *Id*. at *2. Instead, the court addressed the distinct factors that courts use to assess whether there is "good cause for a party to submit to a successive examination." *Id*. at *3 (listing factors, which do not include timeliness).

A dilatory request is grounds for denying a motion like Defendants'. "'The district court's decision to honor the terms of its binding scheduling order does not simply exalt procedural technicalities over the merits of [a] case. Disregard of the order would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier.'" *Smith*, 595 F. App'x at 480 (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)); *see also Inge*, 281 F.3d at 625 (citing approvingly *Mammoth Recreations, Inc.*). Because Defendants provide no good reason (nor, indeed, any reason at all) for their untimely request (nor could they), this Court should deny their motion.

## **CONCLUSION**

Defendants have no excuse for their failure to request an IME in a timely and proper manner. They could have done so at any time in the previous two years, given that they were immensely well-informed that Mr. Williams's mental health was going to be an issue both in the case generally and in Plaintiff's expert reports. They could have done so more than six months ago when Mr. Williams explicitly disclosed his PTSD diagnosis in his deposition. They could have done so after receiving Plaintiff's interrogatory responses in early February 2023, before regular fact discovery closed. And they could have done so between the March 3, 2023, discovery conference and the cutoff for regular fact discovery on March 10. Instead, they inexplicably waited until after this Court explicitly told the parties there shall be no new discovery requests, and after the cutoff for new requests had passed. This Court should not reward such dilatory tactics. Defendants' motion should be denied.

Dated: May 5, 2023                    Respectfully submitted,

/s/Ramis J. Wadood
Ramis J. Wadood (P85791)
Philip Mayor (P81691)
Daniel S. Korobkin (P72842)
American Civil Liberties
    Union Fund of Michigan
2966 Woodward Ave.
Detroit, MI 48201
(313) 578-6803
pmayor@aclumich.org
dkorobkin@aclumich.org
rwadood@aclumich.org

Michael J. Steinberg (P43085)
Ben Mordechai-Strongin*
Lauren Yu*
William Ellis*
Mickey Terlep*
Julia Kahn*
Civil Rights Litigation Initiative
University of Michigan Law School
701 S. State St., Suite 2020
Ann Arbor, MI 48109
(734) 763-1983
mjsteinb@umich.edu

* Student Attorney practicing pursuant to
Local Rule 83.21

Nathan Freed Wessler
American Civil Liberties Union
Foundation
125 Broad Street, 18th Floor
New York, New York 10004
(212) 549-2500
nwessler@aclu.org

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ROBERT JULIAN-BORCHAK WILLIAMS, | |
| Plaintiff, | Case No. 21-cv-10827 Honorable Laurie J. Michelson |
| v. | |
| CITY OF DETROIT, a municipal corporation, DETROIT POLICE CHIEF JAMES WHITE, in his official capacity, and DETECTIVE DONALD BUSSA, in his individual capacity, | |
| Defendant(s). | |

## BRIEF FORMAT CERTIFICATION FORM

I, Ramis J. Wadood, hereby certify that the foregoing brief complies with Eastern District of Michigan Local Rules 5.1(a), 5.1.1, and 7.1 and Judge Michelson's Case Management Requirements. In particular, I certify that each of the following is true (click or check box to indicate compliance):

☒ the brief contains a statement regarding concurrence, *see* LR 7.1(a);

☒ the brief, including footnotes, uses 14-point font, *see* LR 5.1(a)(3);

☒ the brief contains minimal footnotes and, in all events, no more than 10, *see* Case Management Requirements § III.A;

☒ the brief and all exhibits are searchable .pdfs, *see* Case Management Requirements § III.A;

☒ the brief is double spaced (except for footnotes and necessary block quotes) with one-inch margins, *see* LR 5.1(a)(2);

☒ deposition transcripts have been produced in their entirety and not in minuscript, *see* Case Management Requirements § III.A;

☒ if the brief and exhibits total 50 pages or more, a courtesy copy with ECF
headers will be sent to chambers, *see* Case Management Requirements
§ III.B.

I also acknowledge that if the Court later finds that these requirements are not met,
my brief will be stricken.

*/s/Ramis J. Wadood*
Dated: May 5, 2023

18