# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ROBERT JULIAN-BORCHAK WILLIAMS,

   Plaintiff,

     v.

CITY OF DETROIT, a municipal corporation,
DETROIT POLICE CHIEF JAMES WHITE,
in his official capacity, and DETECTIVE
DONALD BUSSA, in his individual capacity,

   Defendants.

_____/

Case No. 21-cv-10827

Hon. Laurie J. Michelson

**PLAINTIFF'S MOTION
FOR SANCTIONS FOR
FAILURE TO PRODUCE
A PREPARED RULE
30(b)(6) DEPONENT**

Michael J. Steinberg (P43085)
Ben Mordechai-Strongin*
Julia Kahn*
Brendan Jackson*
Keenen McMurray*
Lacie Melasi*
Civil Rights Litigation Initiative
University of Michigan Law School
701 S. State St., Suite 2020
Ann Arbor, MI 48109
(734) 763-1983
mjsteinb@umich.edu
bmstrong@umich.edu
jekahn@umich.edu
brendjac@umich.edu
kbmcmurr@umich.edu
lmelasi@umich.edu

* Student Attorney practicing pursuant to
Local Rule 83.21

_____/

Philip Mayor (P81691)
Daniel S. Korobkin (P72842)
Ramis J. Wadood (P85791)
American Civil Liberties
Union Fund of Michigan
2966 Woodward Ave.
Detroit, MI 48201
(313) 578-6803
pmayor@aclumich.org
dkorobkin@aclumich.org
rwadood@aclumich.org

Nathan Freed Wessler
American Civil Liberties
Union Foundation
125 Broad St., 18th Floor
New York, NY 10004
(212) 549-2500
nwessler@aclu.org

## <u>PLAINTIFF'S MOTION FOR SANCTIONS</u>

Pursuant to Rules 37(b)(2)(A), 37(b)(2)(C), 37(d)(1)(A)(i), and 37(d)(3) of the Federal Rules of Civil Procedure, Plaintiff Robert Williams respectfully moves this Court for sanctions against Defendants for repeatedly failing to provide an adequately prepared Rule 30(b)(6) deponent, including after being twice ordered to do so by this Court. For the reasons set forth in the attached brief, this Court should impose appropriate sanctions against Defendants to remedy their obstruction, including "directing that . . . designated facts be taken as established for purposes of the action," Fed. R. Civ. P. 37(b)(2)(A)(i), and award Plaintiff attorneys' fees and costs for all time spent preparing for and conducting depositions of unprepared 30(b)(6) deponents and litigating this motion, *id.* 37(b)(2)(C), (d)(3).

Pursuant to Local Rule 7.1(a), counsel for Plaintiff sought concurrence in this motion via email on June 1, 2023, but counsel for Defendants did not respond.

Dated: June 16, 2023

Respectfully submitted,

/s/ Michael J. Steinberg
Michael J. Steinberg (P43085)
Ben Mordechai-Strongin*
Julia Kahn*
Brendan Jackson*
Lacie Melasi*
Keenen McMurray*
Civil Rights Litigation Initiative
University of Michigan Law School
701 S. State St., Suite 2020
Ann Arbor, MI 48109
(734) 763-1983

1

mjsteinb@umich.edu
bmstrong@umich.edu
jekahn@umich.edu
brendjac@umich.edu
kbmcmurr@umich.edu
lmelasi@umich.edu

* Student Attorney practicing pursuant
to Local Rule 83.21

Philip Mayor (P81691)
Daniel S. Korobkin (P72842)
Ramis J. Wadood (P85791)
American Civil Liberties Union
  Fund of Michigan
2966 Woodward Ave.
Detroit, MI 48201
(313) 578-6803
pmayor@aclumich.org
dkorobkin@aclumich.org

Nathan Freed Wessler
American Civil Liberties
  Union Foundation
125 Broad St., 18th Floor
New York, NY 10004
(212) 549-2500
nwessler@aclu.org

*Counsel for Plaintiff*

2

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

ROBERT JULIAN-BORCHAK WILLIAMS,

Plaintiff,

v.

CITY OF DETROIT, a municipal corporation,
DETROIT POLICE CHIEF JAMES WHITE,
in his official capacity, and DETECTIVE
DONALD BUSSA, in his individual capacity,

Defendants.

_____/

Case No. 21-cv-10827

Hon. Laurie J. Michelson

**PLAINTIFF'S BRIEF IN
SUPPORT OF MOTION
FOR SANCTIONS FOR
FAILURE TO PRODUCE A
PREPARED RULE 30(b)(6)
DEPONENT**

Michael J. Steinberg (P43085)
Ben Mordechai-Strongin*
Julia Kahn*
Brendan Jackson*
Keenen McMurray*
Lacie Melasi*
Civil Rights Litigation Initiative
University of Michigan Law School
701 S. State St., Suite 2020
Ann Arbor, MI 48109
(734) 763-1983
mjsteinb@umich.edu
bmstrong@umich.edu
jekahn@umich.edu
brendjac@umich.edu
kbmucmurr@umich.edu
lmelasi@umich.edu

* Student Attorney practicing pursuant to
Local Rule 83.21

_____/

Philip Mayor (P81691)
Daniel S. Korobkin (P72842)
Ramis J. Wadood (P85791)
American Civil Liberties
   Union Fund of Michigan
2966 Woodward Ave.
Detroit, MI 48201
(313) 578-6803
pmayor@aclumich.org
dkorobkin@aclumich.org
rwadood@aclumich.org

Nathan Freed Wessler
American Civil Liberties
   Union Foundation
125 Broad Street, 18th Floor
New York, New York 10004
(212) 549-2500
nwessler@aclu.org

# TABLE OF CONTENTS

INDEX OF AUTHORITIES..................................................................... ii

STATEMENT OF ISSUES PRESENTED............................................... iv

INTRODUCTION ...............................................................................1

FACTUAL BACKGROUND..................................................................1

APPLICABLE LAW ............................................................................7

ARGUMENT ......................................................................................9

I.    Defendants' Failure to Provide an Adequately Prepared Deponent
      Under Rule 30(b)(6) Is Sanctionable. ..............................................9

      A.    Defendants' 30(b)(6) witnesses were not adequately prepared,
            in defiance of two court orders..............................................10

      B.    Defendants' failure to prepare is tantamount to a failure to appear.........14

II.   Evidentiary and Monetary Sanctions Are Appropriate for Defendants'
      Misconduct. ................................................................................15

CONCLUSION ..................................................................................25

# INDEX OF AUTHORITIES

**Cases**

*Adkisson v. Jacobs Eng'g Grp., Inc.*,
   No. 3:13-CV-505-TAV-HBG,
   2021 WL 1685955 (E.D. Tenn. Feb. 3, 2021) ....................................................17

*Brazos River Auth. v. GE Ionics, Inc.*,
   469 F.3d 416 (5th Cir. 2006) ........................................................................8, 10

*Burks v. Napoleon*,
   No. 2:19-CV-10027, 2021 WL 973077  (E.D. Mich. Mar. 16, 2021)................24

*Consolidated Rail Corp. v. Grand Trunk W. R.R. Co.*,
   853 F. Supp. 2d 666 (E.D. Mich. 2012)...............................................................10

*Consolidated Rail Corp. v. Yashinsky*,
   170 F.3d 591 (6th Cir. 1999) ...............................................................................9

*Doe v. Lexington-Fayette Urb. Cnty. Gov't*,
   407 F.3d 755 (6th Cir. 2005) ...................................................................... 16, 20

*Freeland v. Amigo*,
   103 F.3d 1271 (6th Cir. 1997) .................................................................... 16, 20

*Lasko v. Mobile Hyperbaric Ctrs., LLC*,
   No. 1:19-CV-542, 2021 WL 733768 (N.D. Ohio Feb. 25, 2021) ......................24

*Martin Cnty. Coal Corp. v. Universal Underwriters Ins. Servs.*,
   No. CIV.A. 08-93-ART, 2010 WL 4629761 (E.D. Ky. Nov. 8, 2010)..............10

*Motley v. Metro Man I*,
   No. 20-CV-11313, 2022 WL 17582570 (E.D. Mich. Dec. 12, 2022)................14

*Newfrey LLC v. Burnex Corp.*,
   No. 07-13029, 2009 WL 3698548 (E.D. Mich. Nov. 5, 2009) ..........................14

*QBE Ins. Corp. v. Jorda Enters., Inc.*,
   277 F.R.D. 676 (S.D. Fla. 2012).....................................................................7, 10

*Remote Techs., Inc. v. Data Int'l Co.*,
   No. CV 10-1678 (MJD/JSM),
   2012 WL 13028154 (D. Minn. July 31, 2012) ...................................................18

*Resolution Trust Corp. v. S. Union Co.*,
   985 F.2d 196 (5th Cir. 1993) ...............................................................................14

*Scioto Const., Inc. v. Morris*,
  No. 4:99-CV-83, 2007 WL 1656222 (E.D. Tenn. June 7, 2007) ........................9

*U.S. Bank, N.A. v. Recovery Servs. Nw., Inc.*,
  No. 2:13-CV-01254-APG-GWF,
  2016 WL 11566486 (D. Nev. Oct. 13, 2016) .....................................................17

*United States v. Reyes*,
  307 F.3d 451 (6th Cir. 2002) .............................................................................18

*United States v. Taylor*,
  166 F.R.D. 356 (M.D.N.C. 1996) .......................................................................18

*United Techs. Motor Sys., Inc. v. Borg-Warner Auto., Inc.*,
  No. 97-CV-71706, 1998 WL 1796257 (E.D. Mich. Sept. 4, 1998) ............ 10, 18

*Wicker v. Lawless*,
  278 F. Supp. 3d 989 (S.D. Ohio 2017) ...............................................................14

*Wolfson-Verrichia Grp., Inc. v. Metro Com. Real Est., Inc.*,
  No. 5:08-CV-4997, 2012 WL 13015117 (E.D. Pa. Jan. 9, 2012).......................17

**Rules**

Fed. R. Civ. P. 30(b)(6).................................................................... passim

Fed. R. Civ. P. 37(b)(2)(A) ...................................................... 8, 9, 14, 15, 25

Fed. R. Civ. P. 37(b)(2)(A)(i) .................................................... 8, 21, 24

Fed. R. Civ. P. 37(b)(2)(A)(ii) .................................................. 24, 25

Fed. R. Civ. P. 37(b)(2)(C) ...................................................... 8, 9, 14, 25

Fed. R. Civ. P. 37(d)(1)(A)(i) .................................................. 8, 9, 14, 25

Fed. R. Civ. P. 37(d)(3).................................................................. passim

iii

## STATEMENT OF ISSUES PRESENTED

Whether Defendants failed to comply with Federal Rule of Civil Procedure 30(b)(6) by repeatedly providing inadequately informed deponents to testify on its behalf.

**Plaintiff's answer:** Yes.

Whether Defendants' failure to comply with Rule 30(b)(6) constitutes sanctionable behavior under Federal Rule of Civil Procedure 37.

**Plaintiff's answer:** Yes.

Whether Plaintiff is entitled to evidentiary findings against Defendants where Defendants failed to comply with Federal Rule of Civil Procedure 30(b)(6) and this Court's discovery orders.

**Plaintiff's answer:** Yes.

Whether Plaintiff is entitled to reasonable expenses, including attorneys' fees, for preparing for and taking depositions of unprepared 30(b)(6) deponents and for litigation of this motion.

**Plaintiff's answer:** Yes.

## INTRODUCTION

Plaintiff seeks sanctions to remedy Defendants' failure to comply with their obligations under Federal Rule of Civil Procedure 30(b)(6) and with this Court's discovery orders. Defendants have now produced four deponents testifying as Rule 30(b)(6) designees of the City of Detroit to address questions about the Detroit Police Department's use of facial recognition technology. After the first deponent proved seriously unprepared, this Court twice ordered Defendants to produce properly prepared 30(b)(6) deponents. Yet Defendants continued producing deponents who spent negligible time preparing and were unprepared to address even basic questions within the scope of that topic. The questions deponents could not answer are foundational to Plaintiff's *Monell* municipal liability claim and therefore Plaintiff is substantially prejudiced by his inability to depose a properly prepared 30(b)(6) representative. Plaintiff respectfully requests that this Court order evidentiary and monetary sanctions against Defendants to remedy this prejudice.

## FACTUAL BACKGROUND

Discovery in this case has been ongoing since August 2021. *See* ECF No. 14, PageID.208 (original scheduling order). After a series of extensions—most of which were to provide Defendants with additional time to satisfy Plaintiff's discovery requests—fact discovery only recently closed. *See* ECF No. 41, PageID.726. While the bulk of fact discovery has been completed, Defendants have failed to adequately

1

respond to discovery requests under Federal Rule of Civil Procedure 30(b)(6) after ample opportunity and in contravention of this Court's orders.

On October 14, 2022, Plaintiff provided Defendants' counsel with a notice for the deposition of Defendant City of Detroit as an organization under Rule 30(b)(6). Relevant to the instant motion, Topic 13 in the notice sought a deponent to testify about "[t]he City of Detroit's use of facial recognition technology. This topic includes, but is not limited to, the City of Detroit's use of DataWorks and its process of sending facial recognition search requests to the Michigan State Police." *See* Ex. A at 12.[1] On February 2, 2023, the City produced Deputy Chief of Police Franklin Hayes as its 30(b)(6) representative on this and several other topics.[2] Although Deputy Chief Hayes was able to answer some questions relevant to other noticed topics, he was not adequately prepared to address Topic 13. He testified that his only preparation for the deposition involved reviewing Detroit Police Department ("DPD") policies on facial recognition technology ("FRT"), which were relevant to a different topic. Ex. B, Hayes Dep. 11:12–19. As regards Topic 13, he was unable

---

[1] Plaintiff provided an updated deposition notice, with one additional topic (not at issue in this motion), on December 8, 2022. As discussed at previous status conferences, the parties met and conferred regarding Plaintiff's 30(b)(6) deposition topics, and Defendants only objected to one topic that is not at issue in this motion.

[2] Defendants also designated Christopher Graveline as a 30(b)(6) witness alongside Deputy Chief Hayes, but for a different set of topics not at issue in this motion.

to answer questions about when DPD began using FRT; how its systems are configured; what algorithms it uses; what photos populate the matching database DPD uses to conduct FRT searches or the size of that database; and the circumstances under which DPD requests FRT searches to be conducted by the Michigan State Police ("MSP"), as was done in this case; among other questions. He repeatedly answered relevant questions with variations on "I don't know." *See id.* at 19:2–8, 25:1–5, 29:4–22, 30:18–31:3, 39:20–40:3, 45:7–12, 46:24–47:3, 50:12–24, 67:23–68:1, 76:13–18, 95:9–11, 109:12–19, 111:24–112:2, 113:12–18, 113:21–115:3, 143:2–14. He even answered one question by advising Plaintiff's counsel that "You have to find someone better prepared." *Id.* at 30:16–17. At a March 3, 2023, status conference, this Court agreed that Deputy Chief Hayes was inadequately prepared and ordered Defendants to designate additional 30(b)(6) witnesses on this and other topics.

On April 6, 2023, Defendants offered two additional deponents—John Fennessey and Nathan Howell—to address Topic 13. They, too, were inadequately prepared. Mr. Howell testified that his preparation for the deposition consisted only of re-reading the Department's FRT policies and speaking briefly with Defendants' counsel. Ex. C, Howell Dep. 8:4–20. Mr. Fennessey similarly testified that his preparation consisted of speaking with Defendants' counsel for fifteen minutes and reviewing the 30(b)(6) notice and "an investigator's report." Ex. D, Fennessey Dep.

9:20–10:20. Mr. Howell and Mr. Fennessey were unable to answer basic questions about when DPD began using FRT; what FRT algorithms DPD uses; how DPD's FRT searches work; what DPD's FRT practices were in 2019 at the time of the investigation underlying this case; and other related questions. They, too repeatedly answered questions with variations on "I don't know." *See* Ex. D, Fennessey Dep. 14:10–11, 19:1–5, 20:9–24, 21:6–7, 23:23–24:9, 27:7–12, 30:13–16, 32:1–33:5, 37:6–10, 37:11–19, 42:2–24, 43:24–44:7, 44:24–45:3, 48:12–22, 49:1–19; Ex. C, Howell Dep. 11:17–20, 11:24–12:3, 13:18–14:5, 15:2–4, 17:18–21, 19:17–20, 23:1–15, 24:17–25:2, 28:5–10, 28:11–29:11, 30:14–20, 31:18–32:6, 37:8–23, 46:24–47:6, 49:6–14, 51:14–25, 52:4–19, 54:12–25, 64:6–12, 70:22–71:15. Recognizing that the deponents' lack of knowledge was the result of a failure to properly prepare for the depositions, this Court once again ordered Defendants to designate *and adequately prepare* an additional 30(b)(6) witness at an April 13, 2023, status conference.

At the suggestion of the Court, on April 20, 2023, Plaintiff's counsel provided Defendants with a detailed list of subtopics within Topic 13 that prior deponents had been unprepared to address. Ex. E, E-mailed Letter from Michael Steinberg to Patrick Cunningham re: 30(b)(6) Subtopics (Apr. 20, 2023). That list was intended to guide Defendants' preparation of the next 30(b)(6) deponent.

On May 12, 2023, Defendants produced yet another 30(b)(6) deponent— Stephen Lamoreaux. Like his predecessors, Mr. Lamoreaux devoted virtually no

time to preparation, testifying that he reviewed just two documents—a DPD policy and the template used to request FRT searches from MSP—and spent just 30 minutes speaking with three colleagues and Defendants' counsel a week before the deposition to decide who would be designated as the deponent, followed only by a "brief chat" with Defendants' counsel 15 minutes before the deposition. Ex. F, Lamoreaux Dep. 13:19–14:23, 75:19–76:23. Mr. Lamoreaux was unable to answer numerous questions within the scope of Topic 13, including about when DPD began using FRT; what algorithms DPD was using to perform searches; what photo databases DataWorks had access to; the process that DPD followed for FRT searches at the time of the FRT search at issue in this case; the qualities of the probe image that affect search accuracy; whether confidence scores are generated by DataWorks and if so, how they are used; whether DPD conducted a morphological comparison in the Shinola investigation; whether DPD ensured that MSP's FRT processes met their quality and safety standards; whether FRT results at the time the search in this case occurred had any disclaimer attached to them; whether there were FRT trainings available to (or required of) detectives, and if so, what any FRT trainings addressed; steps that Crime Intelligence Unit ("CIU") analysts take to verify possible leads; whether the CIU deliberately sent MSP poor-quality images knowing that they would run a search on them; and what DPD knew about MSP's policies and procedures regarding FRT searches. *See, e.g.*, Ex. F, Lamoreaux Dep. 20:9–15,

30:11–20, 32:4–33:17, 36:3–12, 39:3–41:23, 43:6–46:19, 53:10–54:3, 56:5–25, 59:4–60:18, 62:7–63:10, 65:8–19, 68:21–72:12, 78:19–80:2, 82:9–83:17.

During and after Mr. Lamoreaux's deposition, Plaintiff's counsel informed Defendants' counsel that Defendants had still failed to provide an adequately prepared witness. On June 1, 2023, Plaintiff once again requested an additional 30(b)(6) witness from Defendants, noting that Plaintiff would seek sanctions if Defendants were not willing to offer additional testimony from an adequately prepared witness. Ex. G, E-mail from Philip Mayor to Patrick Cunningham re: 30(b)(6) Issues (June 1, 2023). Defendants did not respond to that request, necessitating this motion.

Throughout the course of these depositions, Defendants have proceeded as if their 30(b)(6) deponents are not required to prepare themselves by inquiring into information not already personally known to them. At the start of the 30(b)(6) depositions, Defendants' counsel lodged objections that each deponent was testifying "in his capacity as" his particular job function. Ex. B, Hayes Dep. 9:23–24 ("testifying in his capacity as Deputy Chief"); Ex. C, Howell Dep. 7:4–6 ("testifying in his capacity as an analyst"); Ex. D, Fennessey Dep. 7:15–17 ("testifying today in his capacity as a manager of the department of innovation and technology"); Ex. F, Lamoreaux Dep. 11:21–22 ("testifying today in his capacity as director of crime data analytics"). Plaintiff's counsel repeatedly explained why such

objection is inconsistent with Defendants' obligations under Rule 30(b)(6) to produce deponents who have been prepared to testify knowledgeably *on behalf of* the City of Detroit on the noticed topics. *See* Ex. F, Lamoreaux Dep. 11:16–12:8; Ex. C, Howell Dep. at 7:1–8:3; Ex. D, Fennessey Dep. 7:12–9:18. Yet Defendants repeatedly produced deponents who spent negligible time preparing and who lacked even the most basic facts relating to areas where they did not have personal knowledge. As a result of Defendants' intransigence, after almost two years of discovery Plaintiff lacks answers to some of the most basic questions about the DPD's use of facial recognition technology—the technology at the heart of this case.

## APPLICABLE LAW

Federal Rule of Civil Procedure 30(b)(6) provides for the deposition of an organizational party via a designated representative (or representatives) who is authorized to testify on behalf of that organization. The designated representative(s) "must testify about information known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6). The designees—and through them, the organization—have an obligation to "review all matters known or reasonably available to [the organization]" in a "good faith effort to find out the relevant facts and to collect information, review documents and interview those employees with personal knowledge." *QBE Ins. Corp. v. Jorda Enters., Inc.*, 277 F.R.D. 676, 690 (S.D. Fla. 2012) (cleaned up). In situations where current employees lack relevant knowledge,

7

this duty encompasses an obligation to speak with former employees who possess such knowledge. *See, e.g.*, *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006).

Sanctions for discovery violations are governed by Federal Rule of Civil Procedure 37, the relevant parts of which read as follows:

(b)(2)(A): If a party or a party's officer, director, or managing agent—or a witness designated under Rule 30(b)(6) or 31(a)(4)—fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following: . . . (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; or (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence . . .

(b)(2)(C): Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

(d)(1)(A)(i): The court where the action is pending may, on motion, order sanctions if . . . a party or a party's officer, director, or managing agent—or a person designated under Rule 30(b)(6) or 31(a)(4)—fails, after being served with proper notice, to appear for that person's deposition . . .

(d)(3): Sanctions may include any of the orders listed in Rule 37(b)(2)(A)(i)—(vi). Instead of or in addition to these sanctions, the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

8

In addition, a district court may exercise its civil contempt power to compel a litigant to comply with a court order and to compensate the opposing party for costs associated with that litigant's contemptuous conduct. *Consolidated Rail Corp. v. Yashinsky*, 170 F.3d 591, 595 & n.5 (6th Cir. 1999). *See also Scioto Const., Inc. v. Morris*, No. 4:99-CV-83, 2007 WL 1656222, at *3–4 (E.D. Tenn. June 7, 2007) (collecting cases).

Therefore, should this Court determine that Defendants have failed to comply with their discovery obligations, Defendants may be subject to penalties under Rule 37(b)(2)(A) and 37(d)(1)(A)(i) and may be held in contempt of court. Additionally, an award of attorneys' fees and costs to Plaintiff is appropriate under Rule 37(b)(2)(C) and 37(d)(3).

## ARGUMENT

### I.   Defendants' Failure to Provide an Adequately Prepared Deponent Under Rule 30(b)(6) Is Sanctionable.

After four bites at the apple—three of which followed court orders directing Defendants to produce properly prepared deponents—Defendants still refuse to prepare (or even try to prepare) a 30(b)(6) witness to adequately address Topic 13.

For a municipal organization with relatively high turnover, it is understandable that no single employee can address all of the topics raised in the 30(b)(6) notice from personal knowledge. But that is precisely why Rule 30(b)(6) imposes an obligation to "review all matters known or reasonably available to [the

9

organization]" in a "good faith effort to find out the relevant facts and to collect information, review documents and interview those employees with personal knowledge." *QBE Ins. Corp.*, 277 F.R.D. at 690 (cleaned up). *See also Consolidated Rail Corp. v. Grand Trunk W. R.R. Co.*, 853 F. Supp. 2d 666, 670 (E.D. Mich. 2012) ("It is 'well-established' that an organization . . . is obligated to produce a witness knowledgeable about the subjects in the notice and to prepare that witness to testify not just to his/her own knowledge, but the [organization]'s knowledge."). Courts agree that these good-faith efforts include a duty to obtain information from former employees of the organization when doing so is necessary to adequate preparation. *See, e.g.*, *Brazos River Auth.*, 469 F.3d at 433; *United Techs. Motor Sys., Inc. v. Borg-Warner Auto., Inc.*, No. 97-CV-71706, 1998 WL 1796257, at *2 (E.D. Mich. Sept. 4, 1998). *See also Martin Cnty. Coal Corp. v. Universal Underwriters Ins. Servs.*, No. CIV.A. 08-93-ART, 2010 WL 4629761, at *4–5 (E.D. Ky. Nov. 8, 2010) (noting the need to consult with former employees so long as they would reasonably be expected to remember the events in question).

### A. Defendants' 30(b)(6) witnesses were not adequately prepared, in defiance of two court orders.

Defendants have repeatedly produced 30(b)(6) deponents who know little to nothing about the technical aspects of DPD's use of FRT, when DPD began using FRT, and how and why DPD requests FRT searches by the Michigan State Police, among other questions. This lack of knowledge is a predictable consequence of the

deponents' minimal preparation: the 30(b)(6) witnesses designated to date have only prepared for their respective depositions for 1.5 hours in the best case and 15 minutes in the worst, *compare* Ex. F, Lamoreaux Dep. 14:24–15:4 *with* Ex. D, Fennessey Dep. 9:20–10:3. They have reviewed few if any relevant documents, and have barely consulted with other DPD personnel. *See supra* Factual Background. Even after this Court for the second time ordered Defendants to designate an additional 30(b)(6) witness and gave Defendants additional time to properly prepare them,[3] Defendants still failed to adequately prepare their latest witness, Stephen Lamoreaux, on these issues. In preparation, the only two conversations Mr. Lamoreaux had were the conversation during which he was told he was going to be the City's 30(b)(6) witness and a "brief chat with [Defendants' counsel] 15 minutes before [the deposition]." Ex. F, Lamoreaux Dep. 76:1–23. Further revealing his lack of preparation, Mr. Lamoreaux even named multiple current and former DPD employees who would have the information he did not, but testified he "did not get a chance to" consult those employees. *Id.* at 56:5–57:4, 65:20–66:4, 74:5–75:7.

The 30(b)(6) witnesses provided by Defendants to address Topic 13 were each unable to answer important questions about the technical aspects of FRT and the

---

[3] Plaintiff even provided Defendants' counsel with a non-exclusive list of issues Plaintiff expected the City's witness to be prepared to address during the deposition. Ex. E.

processes in place to use that technology. For example, Deputy Chief Hayes could not answer basic questions about which FRT vendors the City of Detroit has contracted with. *See* Ex. B, Hayes Dep. 19:2–13; 20:24–21:22. He was not able to answer any questions about which algorithms DPD's FRT system used or how that system worked. *Id.* at 24:8–25; 113:19–23; 115:4–21. Nor was he able to answer basic questions about whether DPD had access to certain FRT platforms or what the general contents of the photo databases connected to those platforms were. *Id.* at 25:1–3, 28:23–29:18, 30:11–17. Hayes was unable to answer important questions about DPD's process for requesting facial recognition searches and interpreting search results at the time of the Shinola investigation. *Id.* at 66:24–68:1; 113:12–18; 114:21–115:3. Nor did he understand basic terminology about the FRT search process. *Id.* at 45:7–22.

Defendants' next two 30(b)(6) witnesses fared little better. John Fennessey was not aware of which facial recognition systems and algorithms DPD used or had access to at the time of the Shinola investigation. Ex. D, Fennessey Dep. 20:6–21:17, 22:10–13, 23:19–24:9, 37:11–19. He could not answer when DPD started using FRT. *Id.* at 14:10–11, 16:14–21. He could not explain the basics of how DPD ran facial recognition searches in 2019. *Id.* at 30:13–16, 37:6–10, 41:6–42:21, 43:18–44:7, 49:1–19. He did not even know when the Shinola investigation was. *Id.* at 13:11–15. Nathan Howell did not know how the DataWorks platform operated or

12

what facial recognition algorithms DPD used or had access to. Ex. C, Howell Dep. 11:12–12:15, 23:4–7, 24:17–20. He was not able to explain the relationship between DPD and MSP as it relates to facial recognition requests. *Id.* at 28:11–29:11, 30:3–20, 31:18–25, 47:18–48:5, 49:6–14. Nor was he able to answer questions about the process for conducting a facial recognition search and interpreting its results in 2019. *Id.* at 14:23–15:22, 17:13–21, 19:10–20, 33:2–34:6, 46:24–47:6, 48:24–49:5, 53:23–55:11, 70:22–71:9. He also did not even know when the Shinola investigation occurred. *Id.* at 9:22–10:1.

Defendants' latest 30(b)(6) witness on Topic 13, Stephen Lamoreaux, was also unprepared to answer these questions—despite this Court ordering Defendants to adequately prepare him and despite Plaintiff's counsel providing Defendants with a non-exclusive list of specific issues the deposition would likely cover. *See* Ex. E. Mr. Lamoreaux did not have any historical knowledge about the DPD's early use of FRT. Ex. F, Lamoreaux Dep. 19:2–20:15, 22:6–10. His knowledge of how DPD's facial recognition platforms and algorithms worked was even more lacking than that of prior witnesses: he did not know when DPD began using FRT; how DataWorks functioned; what algorithms DataWorks employed; the policies and procedures that the CIU used when running searches; the key differences between DPD and MSP's search capabilities; or the factors that affect whether an FRT search is likely to

13

provide accurate results. *Id.* at 30:3–32:18, 39:6–40:10, 41:3–7, 43:10–21, 44:9–12, 45:1–5, 56:2–57:4, 58:13–59:10, 68:21–69:1, 71:10–72:7, 79:15–80:2, 82:3–83:17.

Defendants' repeated failure to produce prepared 30(b)(6) witnesses contravenes this Court's orders at the March 3 and April 13, 2023, status conferences. As discussed further below, such "fail[ure] to obey an order to provide or permit discovery" is sanctionable. Fed. R. Civ. P. 37(b)(2)(A), (b)(2)(C). The specific relief requested is detailed in Part II, *infra*.

## B. *Defendants' failure to prepare is tantamount to a failure to appear.*

The extent of Defendants' failure to prepare their 30(b)(6) witnesses warrants additional sanctions under Federal Rule of Civil Procedure 37(d) for a witness's failure to appear. Courts widely recognize that "producing an unprepared witness is tantamount to a failure to appear, which may warrant sanctions." *Motley v. Metro Man I*, No. 20-CV-11313, 2022 WL 17582570, at *6 (E.D. Mich. Dec. 12, 2022) (citing *Wicker v. Lawless*, 278 F. Supp. 3d 989 (S.D. Ohio 2017)). *See also Newfrey LLC v. Burnex Corp.*, No. 07-13029, 2009 WL 3698548, at *2 (E.D. Mich. Nov. 5, 2009) ("[W]hen a Rule 30(b)(6) deponent is not prepared to answer questions related to the matters included in the deposition notice, it is as if that witness did not appear at the deposition at all."); *Resolution Trust Corp. v. S. Union Co.*, 985 F.2d 196, 197 (5th Cir. 1993) (same). The Federal Rules provide that failing to appear for a Rule 30(b)(6) deposition is sanctionable. Fed. R. Civ. P. 37(d)(1)(A)(i).

14

As illustrated above, each of Defendants' 30(b)(6) witnesses has been woefully unprepared to address issues central to Topic 13. As a result, Defendants have essentially disavowed any responsibility for providing meaningful discovery about how its FRT systems and processes worked at the time of the central events in this lawsuit. This is tantamount to Defendants failing to produce a witness. Federal Rule of Civil Procedure 37(d) dictates that such a failure can result in any sanctions listed in Rule 37(b)(2)(A). In addition, Rule 37(d) states that a court *must* order the offending party to pay the opposing party's reasonable expenses (including attorneys' fees) either in place of, or in addition to, any other sanctions. Fed. R. Civ. P. 37(d)(3). Plaintiff believes that the most just outcome of Defendants' repeated defiance of Rule 30(b)(6) is an award of reasonable expenses in addition to the evidentiary sanctions detailed below in Part II. Plaintiff's counsel has put significant time and resources into preparing for and taking depositions of four inadequately prepared deponents and seeking this Court's assistance in compelling production of successive deponents. Defendants should be ordered to reimburse those costs.

## II.     Evidentiary and Monetary Sanctions Are Appropriate for Defendants' Misconduct.

Once the Court determines that Defendants have engaged in sanctionable conduct in violating Federal Rule of Civil Procedure 30(b)(6) and this Court's orders, it must determine what sanctions are appropriate. The Sixth Circuit employs a four-part test to ascertain the propriety of sanctions:

> The first factor is whether the party's failure to cooperate in discovery is
> due to willfulness, bad faith, or fault; the second factor is whether the
> adversary was prejudiced by the party's failure to cooperate in discovery;
> the third factor is whether the party was warned that failure to cooperate
> could lead to the sanction; and the fourth factor in regard to a dismissal is
> whether less drastic sanctions were first imposed or considered.

*Doe v. Lexington-Fayette Urb. Cnty. Gov't*, 407 F.3d 755, 766 (6th Cir. 2005)

(quoting *Freeland v. Amigo*, 103 F.3d 1271, 1277 (6th Cir. 1997)). Because Plaintiff

is not seeking dismissal, the fourth factor is not relevant here.

As to the first factor, Defendants' misconduct has been willful and in bad

faith. In two status conferences, the Court has agreed with Plaintiff that previously

produced 30(b)(6) deponents were unprepared, and has ordered Defendants to

produce prepared deponents, only for Defendants to again produce deponents who

had spent negligible time and effort preparing and who were not able to answer

numerous relevant questions. Defendants were amply on notice of the topics and

questions on which its 30(b)(6) deponents needed to prepare: in addition to the

30(b)(6) deposition notice itself (first provided to Defendants nearly eight months

ago, *see* Ex. A, in the leadup to the most recent 30(b)(6) deposition on Topic 13,

Defendants had access to three deposition transcripts on Topic 13 that presented a

raft of questions that the prior deponents had been unable to answer, *see generally*

Ex. B, Hayes Dep.; Ex. C, Howell Dep.; Ex. D, Fennessey Dep., and an extensive

list of 25 subtopics within Topic 13 to guide the deponent's preparation, Ex. E.

Plaintiff's counsel even identified questions and issues for which they would be

requesting additional deponents on the record. *See*, *e.g.*, Ex. B, Hayes Dep. 29:15–17 ("This is another area where we're going to need somebody who's more familiar I think with how it works."), 24:16–19 (similar), 31:15–16 (similar). Yet, Defendants' deponents barely prepared, and spoke to none of the individuals they were able to identify as likely having personal knowledge of the information at issue. *See, e.g.*, Ex. F, Lamoreaux Dep. 56:12–25.

Defendants' repeated failure—refusal, even—to prepare their 30(b)(6) witnesses even after being so ordered by this Court demonstrates willfulness and bad faith. *See, e.g.*, *Adkisson v. Jacobs Eng'g Grp., Inc.*, No. 3:13-CV-505-TAV-HBG, 2021 WL 1685955, at *7 (E.D. Tenn. Feb. 3, 2021) ("[T]he Court finds that sanctions are appropriate, based on Defendant's failure to comply with the previous Order of the Court, as well as its failure to adequately prepare its corporate representative under Rule 30(b)(6)."); *U.S. Bank, N.A. v. Recovery Servs. Nw., Inc.*, No. 2:13-CV-01254-APG-GWF, 2016 WL 11566486, at *5 (D. Nev. Oct. 13, 2016) ("[Defendant's] failure to comply with the requirements of Rule 30(b)(6) and the Court's order by producing Mr. Morin, who repeatedly admitted to not being prepared . . . can only be described as willful and in bad faith."); *Wolfson-Verrichia Grp., Inc. v. Metro Com. Real Est., Inc.*, No. 5:08-CV-4997, 2012 WL 13015117, at *3 (E.D. Pa. Jan. 9, 2012) (defendants acted in bad faith by "failing to prepare their

17

corporate representative witnesses to testify on the issue of damages, even after the Court ordered them to do so").

Bad faith is also evident in Defendants' counsel's repeated "objection" that each 30(b)(6) deponent was testifying only in their individual capacity. *See supra* page 6. It is axiomatic that 30(b)(6) designees speak *for* the corporate entity, and that "it is not the corporate designee's personal knowledge or experience that matters. What matters is how well the deponent has been prepared by the corporation to answer questions that may lie outside the reaches of her personal knowledge." *Remote Techs., Inc. v. Data Int'l Co.*, No. CV 10-1678 (MJD/JSM), 2012 WL 13028154, at *15 (D. Minn. July 31, 2012). Defendants willfully misconstrued their obligations under Rule 30(b)(6), requiring multiple rounds of depositions of unprepared individuals.

The burden of proof is on the sanctioned party to establish that its "failure to comply was due to inability, not willfulness or bad faith." *United States v. Reyes*, 307 F.3d 451, 458 (6th Cir. 2002). Defendants may attempt to argue that those with personal knowledge of issues within Topic 13 no longer work for the City of Detroit, but as explained above, this problem "do[es] not relieve a corporation from preparing its Rule 30(b)(6) designee to the extent matters are reasonably available, whether from documents, past employees, or other sources." *United Techs. Motor Sys.*, 1998 WL 1796257, at *2 (quoting *United States v. Taylor*, 166 F.R.D. 356,

361–62 (M.D.N.C. 1996)). Defendants have suggested no other reason for their repeated failures, and so have acted willfully and in bad faith.

For the second factor, Plaintiff is prejudiced by Defendants' repeated failure to produce prepared 30(b)(6) witnesses. As discussed with the Court at prior status conferences, Topic 13 is highly relevant to Plaintiff's *Monell* claim against the City of Detroit. For example, information about when DPD began requesting FRT searches is relevant to DPD's culpability because it will establish the length of time DPD used FRT without any policy or training in place. And information about how DPD used FRT, how its systems were configured, and what it understood about FRT's flaws in 2019 is relevant to Plaintiff's argument that DPD allowed FRT searches without proper oversight, but with awareness of the risks of FRT misidentifications. Without adequate 30(b)(6) testimony, Plaintiff has no way to obtain authoritative information about the technical aspects of, processes for, and historical use of facial recognition technology by DPD—especially as it relates to the technology and processes at the time of the Shinola investigation. Fact discovery has closed, and Plaintiff is still unable to obtain even basic information about DPD's use of facial recognition technology in 2019.

Additionally, in order to avoid further delay of the dispositive motions schedule, Plaintiff's experts have already prepared their expert reports and Plaintiff's counsel has already provided them to Defendants. *See* Ex. H, E-mail from Ben

19

Mordechai-Strongin to Patrick Cunningham Transmitting Plaintiff's Expert Reports (May 26, 2023); ECF No. 41, PageID.726 (setting expert disclosures deadline for May 26, 2023). Although the Topic 13 information that the unprepared deponents could not supply would have been relevant to formation of at least two of those experts' opinions, the experts were not able to benefit from that factual development. Thus, Plaintiff is prejudiced by Defendants' failure to satisfy its 30(b)(6) obligations.

As for the third factor, Defendants have been "warned that failure to cooperate could lead to the sanction." *Lexington-Fayette Urb. Cnty. Gov't*, 407 F.3d at 766 (quoting *Freeland*, 103 F.3d at 1277). This Court ordered Defendants at an April 13 status conference to provide adequately prepared 30(b)(6) witnesses. The Court stated then that no pre-motion conference would be necessary for any subsequent motion for sanctions. Additionally, on June 1, 2023, Plaintiff's counsel sent an email to Defendants' counsel notifying him that Plaintiff "anticipate[s] filing a motion for sanctions regarding DPD's failure to produce a proper 30(b)(6) witness on these topics and similar ones within two weeks or less if you do not respond to this email within a week (by June 8) to indicate that the City is willing to produce a properly prepared 30(b)(6) witness on our outstanding topics." Ex. G. Defendants thus had ample notice of their duty to fulfil this Court's orders and nonetheless refused to do so within the generous time period this Court imposed, or even in the additional time since the close of fact discovery offered as a courtesy by Plaintiff.

Accordingly, Plaintiff believes the following sanctions are appropriate.

First, pursuant to Federal Rules of Civil Procedure 37(b)(2)(A)(i) and 37(d)(3), this Court should order that the following facts be taken as established:

1. **Fact to be taken as established:** The Detroit Police Department began making facial recognition search requests to the Michigan State Police on May 15, 2014, and began directly using the Michigan State Police's facial recognition search platform to run facial recognition searches on September 16, 2014.

   **Basis for fact:** Ex. I, E-mail from Angela Yankowski, Michigan State Police, to Andrew Rutebuka, Executive Manager, Crime Intelligence Unit, Detroit Police Department (July 18, 2019). E-mail reporting that:

   - "From May 15, 2014 through July 16, 2019, MSP SNAP Unit facial examiners have processed 377 SNAP Case Management Facial Recognition (CMFR) search requests for the Detroit Police Department (DPD)."

   - "From September 16, 2014 to July 16, 2019, the DPD has used the SNAP CMFR tool a total of 4,078 times . . . ."

   **Deponents' failure to answer questions on this issue:** Ex. B, Hayes Dep. 14:18–18:20; Ex. C, Howell Dep. 28:11–29:5; Ex. D, Fennessey Dep. 14:10–16:21; Ex. F, Lamoreaux Dep. 19:2–22:10.

2. **Fact to be taken as established:** In March 2019, the facial recognition platform and algorithms utilized by the Detroit Police Department were identical to those utilized by the Michigan State Police at the time, and the Department therefore had knowledge of how that platform and those algorithms were utilized by the Michigan State Police.

   **Basis for fact:** *Compare* Ex. J, Howard Dep. 11:22–14:21 (testifying to MSP's use of the DataWorks Plus platform and facial recognition algorithms from Rank One Computing ("ROC") and NEC in 2019), *with* Ex. K, Professional Services Contract Between City of Detroit and DataWorks Plus, at 018458–018459 (contracting for use of DataWorks Plus platform and facial

21

recognition algorithms from ROC and NEC in 2017); Ex. F, Lamoreaux Dep. 53:15–24 (DPD and MSP used same DataWorks platform).

**Deponents' failure to answer questions on this issue:** Ex. F, Lamoreaux Dep. 30:11–19, 32:6–14, 53:25–54:3; Ex. C, Howell Dep. 11:24–12:1, 30:3–20, 31:18–32:6, 33:2–33:12, 49:6–11; Ex. D, Fennessey Dep. 20:6–11, 21:8–12; Ex. B, Hayes Dep. 23:7–10, 24:22–24.

3. **Fact to be taken as established:** In 2019, the Detroit Police Department's Crime Intelligence Unit would knowingly pass poor quality probe images to the Michigan State Police to conduct facial recognition searches despite knowing that the Michigan State Police used the same facial recognition platform and algorithms, and DPD CIU personnel would not inform (nor were they required to inform) Department investigators of the basis for this decision.

   **Basis for fact:** Ex. L, Yager Deposition 48:10–49:19; 50:20–51:7; 57:18–58:3 (testifying that CIU forwards facial recognition requests that are too poor to generate results internally to MSP for an additional search); Ex. M, E-mail from "Analyst Yager" to Levan Adams (March 8, 2019) (notifying, without explaining, that the facial recognition request had been forwarded to MSP because "I was unable to confirm the identify [sic] of the subject."); Ex. F, Lamoreaux Dep. 37:8–24, 51:22–52:2 (poor quality images sent to MSP).

   **Deponents' failure to answer questions on this issue:** Two of Defendants' 30(b)(6) witnesses gave conflicting testimony regarding this fact. *Compare* Ex. F, Lamoreaux Dep. 37:8–24, 51:22–52:2, *with* Ex. C, Howell Dep. 46:3–15. But the non-30(b)(6) testimony cited above indicates that Lamoreaux's understanding is correct.

4. **Fact to be taken as established:**  At some point in the last two years, the Detroit Police Department has stopped performing facial recognition searches using its own system and has instead chosen to utilize the Michigan State Police's system because the Department's own facial recognition system did not provide any unique advantages or functions beyond those available to the Michigan State Police's system.

   **Basis for fact:** Ex. D, Fennessey Dep. 20:25–22:7 (testifying that the Department no longer utilizes the DataWorks platform through a contract with DataWorks); Ex. F, Lamoreaux Dep. 29:10–13 (discussing letting DPD's

contract with DataWorks lapse); Ex. L, Yager Dep. 48:1–9 (suggesting that MSP's facial recognition system may have advantages over DPD's).

**Deponents' failure to answer questions on this issue:** Ex. F, Lamoreaux Dep. 29:10–16 (discussing "my understanding" of why DPD let contract with DataWorks lapse); Ex. D, Fennessey Dep. 31:6–9 (lacks familiarity with MSP system); Ex. C, Howell Dep. 13:24–14:2 (doesn't know whether DPD's system had any advantages over MSP system).

5. **Fact to be taken as established:** In 2019, as today, the Detroit Police Department's Crime Intelligence Unit knew that the Michigan State Police employed multiple facial recognition algorithms and knew that the Michigan State Police conducted facial recognition searches using a database that included both current and former driver's license photos, but took no steps to verify whether a facial recognition investigative lead returned by the Michigan State Police was selected by more than one algorithm or involved the suspect's current driver's license photo.

**Basis for fact:** CIU's Standard Operating Procedures did not include any instruction to verify whether the subject of an investigative lead received from MSP was flagged by more than one algorithm or was pulled from a current or expired driver's license. *See* Ex. N, CIU Standard Operating Procedures, § 8. In addition, the investigative lead report that identified Plaintiff, and the relevant correspondence among MSP, CIU, and Detective Adams, did not mention any verification of those two facts. Ex. O, Investigative Lead Report Identifying Plaintiff; Ex. P, E-mail from "Analyst Furstenau" to Levan Adams (Mar. 11, 2019). *See also* Ex. F, Lamoreaux Dep. 34:9–21 (testifying that MSP's SNAP database includes both current and expired licenses); Ex. J, Howard Dep. 50:19–52:2 (testifying that MSP trains CIU analysts in how MSP's facial recognition system works); Ex. C, Howell Dep. 47:23–48:5 (CIU personnel don't ask for additional information from MSP).

**Deponents' failure to answer questions on this issue:** Ex. C, Howell Dep. 48:24–49:14; Ex. F, Lamoreaux Dep. 71:4–73:3; Ex. B, Hayes Dep. 30:18–21.

6. **Fact to be taken as established:** When the Detroit Police Department began running facial recognition searches through its contract with DataWorks Plus, the Department's matching database contained 500,000 images of faces.

**Basis for fact:** Ex. K at 018459, 018460, 018496, 018498.

**Deponents' failure to answer questions on this issue:** Ex. B, Hayes Dep. 30:11–17; Ex. D, Fennessey Dep. 27:7–23; Ex. F, Lamoreaux Dep. 32:23–33:8.

7.  **Fact to be taken as established:** The Detroit Police Department does not know, and has not at any time known or taken steps to learn, the confidence threshold set in the DataWorks Plus facial recognition platform or the algorithms it has used or currently uses.

    **Basis for fact:** Ex. D, Fennessey Dep. 42:2–21 (lacking knowledge); Ex. C, Howell Dep. 44:16–18 (same); Ex. F, Lamoreaux Dep. 45:25–46:14 (same).

    **Deponents' failure to answer questions on this issue:** Ex. D, Fennessey Dep. 42:2–21; Ex. C, Howell Dep. 44:16–18; Ex. F, Lamoreaux Dep. 45:25–46:14.

Second, in addition to "directing that . . . [these] facts be taken as established for purposes of the action" as a sanction under Federal Rule of Civil Procedure 37(b)(2)(A)(i), this Court should also "prohibit[]" defendants "from introducing . . . matters in evidence" that contradict these established facts pursuant to Federal Rule of Civil Procedure 37(b)(2)(A)(ii). *See, e.g.*, *Lasko v. Mobile Hyperbaric Ctrs., LLC*, No. 1:19-CV-542, 2021 WL 733768, at *11 (N.D. Ohio Feb. 25, 2021); *Burks v. Napoleon*, No. 2:19-CV-10027, 2021 WL 973077, at *2 (E.D. Mich. Mar. 16, 2021), *objections overruled*, 2021 WL 5873002 (E.D. Mich. July 13, 2021).

Third, due to their lack of preparedness, some 30(b)(6) deponents testified in contradictory ways in response to the same questions. *Compare, e.g.*, Ex. C, Howell Dep. 39:–6, 39:25–40:5, *with* Ex. F, Lamoreaux Dep. 61:2–62:2; *and* Ex. C, Howell

Dep. 46:3–15, *with* Ex. F, Lamoreaux Dep. 37:8–24, 51:22–52:2. Pursuant to Rule 37(b)(2)(A)(ii), Defendants should be prohibited from introducing these contradictory statements to attempt to create a genuine issue of material fact regarding Defendant City of Detroit's practices or knowledge.

Finally, as an additional (not alternative) sanction, Defendants should be ordered to pay Plaintiff's reasonable expenses, including attorneys' fees, transcription fees, and travel costs, for inadequate 30(b)(6) depositions that Plaintiff's counsel scheduled, noticed, prepared for, and took, as well as for litigation of this motion. Fed. R. Civ. P. 37(b)(2)(C), (d)(3). Under the Rules, an award of expenses is *mandatory* where, as here, a party has failed to obey a discovery order, Fed. R. Civ. P. 37(b)(2)(C), or failed to appear for a 30(b)(6) deposition, *id.* 37(d)(3).

Without these sanctions, Plaintiff will be prejudiced in this suit, and Defendants will be uninhibited from repeating their obstructionist conduct in future lawsuits seeking to hold the Detroit Police Department accountable for violating an individual's constitutional rights.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully moves this Court to impose the evidentiary and monetary sanctions detailed above, as well as any other sanctions the Court deems just, on Defendants pursuant to Federal Rules of Civil Procedure 37(b)(2)(A), (b)(2)(C), (d)(1)(A)(i), and (d)(3).

Dated: June 16, 2023                              Respectfully submitted,

                                                  /s/ Michael J. Steinberg
                                                  Michael J. Steinberg (P43085)
                                                  Ben Mordechai-Strongin*
                                                  Julia Kahn*
                                                  Brendan Jackson*
                                                  Lacie Melasi*
                                                  Keenen McMurray*
                                                  Civil Rights Litigation Initiative
                                                  University of Michigan Law School
                                                  701 S. State St., Suite 2020
                                                  Ann Arbor, MI 48109
                                                  (734) 763-1983
                                                  mjsteinb@umich.edu
                                                  bmstrong@umich.edu
                                                  jekahn@umich.edu
                                                  brendjac@umich.edu
                                                  kbmcmurr@umich.edu
                                                  lmelasi@umich.edu

                                                  * Student Attorney practicing
                                                  pursuant to Local Rule 83.21

                                                  Philip Mayor (P81691)
                                                  Daniel S. Korobkin (P72842)
                                                  Ramis J. Wadood (P85791)
                                                  American Civil Liberties Union
                                                    Fund of Michigan
                                                  2966 Woodward Ave.
                                                  Detroit, MI 48201
                                                  (313) 578-6803
                                                  pmayor@aclumich.org
                                                  dkorobkin@aclumich.org

                                                  *Counsel list continued
                                                  on the next page.*

Nathan Freed Wessler
American Civil Liberties
  Union Foundation
125 Broad St., 18th Floor
New York, NY 10004
(212) 549-2500
nwessler@aclu.org

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

|  |  |
|---|---|
| ROBERT JULIAN-BORCHAK WILLIAMS, <br><br> Plaintiff, <br><br> v. <br><br> CITY OF DETROIT, a municipal corporation, DETROIT POLICE CHIEF JAMES WHITE, in his official capacity, and DETECTIVE DONALD BUSSA, in his individual capacity, <br><br> Defendant(s). | Case No. 21-cv-10827 <br><br> Honorable Laurie J. Michelson |

## BRIEF FORMAT CERTIFICATION FORM

I, Michael J. Steinberg, hereby certify that the foregoing brief complies with Eastern District of Michigan Local Rules 5.1(a), 5.1.1, and 7.1 and Judge Michelson's Case Management Requirements. In particular, I certify that each of the following is true (click or check box to indicate compliance):

☒ the brief contains a statement regarding concurrence, *see* L.R. 7.1(a);

☒ the brief, including footnotes, uses 14-point font, *see* L.R. 5.1(a)(3);

☒ the brief contains minimal footnotes and, in all events, no more than 10, *see* Case Management Requirements § III.A;

☒ the brief and all exhibits are searchable .pdfs, *see* Case Management Requirements § III.A;

☒ the brief is double spaced (except for footnotes and necessary block quotes) with one-inch margins, *see* L.R. 5.1(a)(2);

☒ deposition transcripts have been produced in their entirety and not in minuscript, *see* Case Management Requirements § III.A;

☒ if the brief and exhibits total 50 pages or more, a courtesy copy with ECF headers will be sent to chambers, *see* Case Management Requirements § III.B.

I also acknowledge that if the Court later finds that these requirements are not met, my brief will be stricken.

Dated: June 16, 2023                    Respectfully submitted,

                                        /s/ Michael J. Steinberg
                                        Michael J. Steinberg (P43085)