**MICHIGAN LAW**
**CIVIL RIGHTS LITIGATION INITIATIVE**
UNIVERSITY OF MICHIGAN

April 20, 2023

Patrick M. Cunningham
Senior Assistant Corporation Counsel
City of Detroit Law Dept.
2 Woodard Avenue, Suite 500      Sent via email only
Detroit, MI 48226
cunninghamp@detroitmi.gov

    Re: 30(b)(6) Subtopics

Patrick,

Below, please see a list of 30(b)(6) subtopics, which we expect the remaining 30(b)(6) deponents to be prepared to address at their depositions. We are providing these as a courtesy and without prejudice to our asking other relevant questions in areas that fall within the outstanding topics of our original 30(b)(6) notice. We are providing these, as suggested by Judge Michelson, in order to facilitate your identification and preparation of the 30(b)(6) deponents. As Judge Michelson ordered at the latest status conference, and as required by law, we expect that if the deponents do not already have pre-existing knowledge on these areas they will educate themselves so that they are in a position to speak to knowledgeably on the City's behalf by the time of their deposition.

a. The City of Detroit's use of facial recognition technology at the time of the Shinola Investigation.
b. The City of Detroit's oversight of facial recognition technology prior to, at the time of, and since the Shinola investigation, including whether and how DPD or DPD personnel used Clearview AI.
c. The City of Detroit's use of facial recognition technology algorithms at the time of the Shinola Investigation as well as through today, including which algorithms and versions were used.
d. The City of Detroit's use of DataWorks at the time of the Shinola Investigation.
e. The City of Detroit's process of sending facial recognition search requests to the Michigan State Police, at the time of the Shinola investigation as well as through today. This includes policies and practices (formal or informal) about when searches were/are sent to MSP and whether they are reviewed before being sent.
f. The City of Detroit's Crime Intel Unit's training on facial recognition technology at the time of the Shinola Investigation as well as through today, including but not limited to MSP trainings and FBI trainings.
g. The City of Detroit's use of confidence scores and confidence thresholds at the time of the Shinola Investigation as well as through today. This includes, but is not limited to, whether the system provides confidence scores, how if at all the scores are used, and what examiners understand them to or are trained that they mean.
h. The City of Detroit's setting configuration and probe image manipulation when using facial recognition technology.
i. The City of Detroit's policies relating to facial recognition technology at the time of the Shinola Investigation.

j. The City of Detroit's Crime Intel Unit's involvement with the Oliver Investigation.
k. The City of Detroit's Crime Intel Unit's process of using facial recognition technology to generate an investigative lead at the time of the Shinola Investigation. This includes, but is not limited to:
   1. Whether DPD's FRT technology at the time returned confidence scores.
   2. How many "gallery" images each algorithm used by DPD typically return.
   3. What did an examiner do if only one algorithm returns a photo of a suspect they believe may be the correct investigative lead. Did they inform the investigating detective? What did an examiner do if one algorithm returned no photos?
   4. What categories of photos were included in the databases searched by the algorithms in use at the time.
   5. Whether DPD examiners were trained to see if more than one photo of a potential suspect were contained in the databases, regardless of how many photos of that potential suspect showed up in a gallery of possible match candidates. (And whether examiners were trained or permitted to share this information with investigators.)
   6. Whether DPD examiners made an assessment of the quality of the probe photo, and whether that assessment was committed to writing. (We will request that any forms used for this purpose be disclosed at the time of the deposition, as they are plainly responsive to prior RFPs.) If so, whether examiner were trained or permitted to share that assessment with investigators.
   7. Whether DPD examiners conducted morphological comparisons as part of their FRT examinations. If so, how did they document those comparisons. (We will request that any forms used for this purpose be disclosed at the time of the deposition, as they are plainly responsive to prior RFPs.) Were examiners trained or permitted to share any morphological assessments with investigators.
   8. How the examinations conducted by any subsequent examiners or supervisors were performed, and, in particular, whether they review the galleries or only the final investigative lead selected by the primarily examiner.
l. The City of Detroit's Crime Intel Unit's process for forwarding requests to MSP at the time of the Shinola Investigation, including DPD's process of forwarding the request and the information sent back from MSP.
m. The City of Detroit's knowledge regarding MSP's processes and procedures for processing and returning an FRT request from DPD at the time of the Shinola investigation, including DPD's awareness (or lack thereof) of MSP's answers to items (j)(1)-(8) above.
n. Whether DPD took any steps to educate itself or train its examiners about the procedures used by MSP when utilizing FRT to generate an investigative lead
o. The City of Detroit's knowledge of FRT's drawbacks, biases, and potential for abuse at the time before and until the Shinola investigation.
p. How and whether Detroit Police Department encouraged or advised investigators of the option of using FRT to solve cases.
q. When and why DPD switched from conducting FRT searches pursuant to its own contract with DataWorks, to conducting FRT searches through MSP's system.

If you have any questions, please feel free to send me an email.

Very truly yours,

*/s/ M.J.S.*

Michael J. Steinberg
Civil Rights Litigation Initiative
University of Michigan Law School
701 S. State St., Suite 2020
Ann Arbor, MI 48109
(734) 763-1983
mjsteinb@umich.edu

Phil Mayor
Daniel S. Korobkin
Ramis J. Wadood
American Civil Liberties Union
Foundation of Michigan
2966 Woodward Ave.
Detroit, MI 48201
(313) 578-6803
pmayor@aclumich.org

Nathan Freed Wessler
American Civil Liberties Union
Foundation
125 Broad Street, 18th Floor
New York, New York 10004
(212) 549-2500
nwessler@aclu.org