# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

ROBERT JULIAN-BORCHAK WILLIAMS,

       Plaintiff,

v.

CITY OF DETROIT, a municipal corporation,
DETROIT POLICE CHIEF JAMES CRAIG,
in his official capacity, and DETECTIVE
DONALD BUSSA, in his individual capacity,

       Defendants.

Case No. 21-10827

Hon. Laurie J. Michelson

---

**DEFENDANTS' RESPONSE TO PLAINTIFF'S SECOND FRIVOLOUS MOTION FOR SANCTIONS (ECF No. 50)**

i

## Statement of Questions Presented

I.      Whether Plaintiff's frivolous motion should be denied.

## Most Appropriate Authority

Fed. R. Civ. P. 30(b)(6):

**(6)** *Notice or Subpoena Directed to an Organization.* In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and **must describe with reasonable particularity the matters for examination**. The named organization must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and **it may set out the matters on which each person designated will testify**. Before or promptly after the notice or subpoena is served, the serving party and the organization must confer in good faith about the matters for examination. A subpoena must advise a nonparty organization of its duty to confer with the serving party and to designate each person who will testify. The persons designated must testify about information known or reasonably available to the organization. This paragraph (6) does not preclude a deposition by any other procedure allowed by these rules.
Fed. R. Civ. P. 30

## Introduction

Plaintiff's frivolous motion satisfies none of the requirements for the relief he seeks and should plainly be denied.

## Facts

This case does not involve the use of facial recognition technology by the Detroit Police Department. This case involves an investigative lead generated by the Michigan State Police. (**Exhibit 1**). Jennifer Coulson, a digital image examiner with the Michigan State Police used the Michigan State Police's facial recognition technology and her own expertise in morphological comparison to generate an investigative lead based upon a probe image from security footage of a robbery at Shinola on October 2, 2018. (**Exhibit 2** 14:3-14). Krystal Howard, Ms. Coulson's manager at the Michigan State Police, provided deposition testimony in this case regarding the algorithms used by the Michigan State Police to help generate the investigative lead. (**Exhibit 3** 13:17-14:4).

Detective Donald Bussa of the Detroit Police Department used the investigative lead to prepare a photographic lineup that ultimately resulted in the identification of Plaintiff as the suspect involved in the robbery of Shinola. (**Exhibit 4**). Despite the fact that neither the technology nor the analyst used in generating the investigative lead were associated with the Detroit Police

1

Department, Plaintiff pursued irrelevant and abusive notices of depositions directed to the City of Detroit's generation of investigative leads using its own technology and analysts.

Plaintiff sought depositions on a number of subjects. Plaintiff did not describe with reasonable particularity the matters for examination as required by Fed. R. Civ. P. 30(b)(6). Instead, Plaintiff provided 19 vague topics including "The City of Detroit's use of facial recognition technology." (ECF No.50-2 ¶ 13).

The City of Detroit provided six different witnesses to testify at depositions pursuant to Fed. R. Civ. P. 30(b)(6). Deputy Chief Franklin Hayes testified for nearly five hours on February 2, 2023. (ECF No. 50-3). Chrisotpher Graveline, Director of Professional Standards and Constitutional Policing for the Detroit Police Department testified for nearly five hours on February 9, 2023. John Fennessey, a manager with the City of Detroit's Department of Innovation Technology testified for nearly two hours on April 6, 2023. (ECF No. 50-5). Nathan Howell, a Crime Analyst with the Detroit Police Department's Crime Intelligence Unit testified for nearly three hours on April 6, 2023. (ECF No. 50-4). Stephen Lamoreaux, Director of Crime Data Analytics for the Crime Intelligence Unit of the Detroit Police Department testified for two hours on May 12, 2023. (ECF No. 50-7). And Lt. Jeffrey Hahn testified for four hours on May 18, 2023.

Additionally, Rathe Yager, an Intelligence Specialist with the Crime Intelligence Unit, Sgt. Ray Saati, Detective Benjamin Atkinson, Lt. Angelieque Chadwick Bills, Lt. Rodney Cox, and former Chief James Craig testified at depositions. While none of them were designated as 30(b)(6) witnesses, all of them provided testimony related to topics in Plaintiff's 30(b)(6) notice.

## Analysis

Plaintiff seeks sanctions under Fed. R. Civ. P. 37(b), although he fails to identify any order that Defendants allegedly violated. Plaintiff seeks sanctions under Fed. R. Civ. P. 37(d), although he identifies no witness who failed to appear for his deposition.

First and foremost, no sanction against Defendant Bussa is appropriate because he did not violate any court order and was not obligated to produce 30(b)(6) deponents. However, no sanction is appropriate against the City because it also did not violate any court order and it produced 30(b)(6) deponents to testify as required by the rule.

Plaintiff failed to specify with reasonable particularity the matters for the depositions as required by Rule 30(b)(6) by supplying vague descriptions like "The City of Detroit's use of facial recognition technology." (ECF No.50-2 ¶ 13). And the City exercised its right under the rule to designate individuals to testify on its

3

behalf while setting out the matters on which each witness designated would testify. (ECF No. 50-3 9:23–24; ECF No. 50-4 7:4–6; ECF No. 50-5 7:15–17; ECF No. 50-7 11:21–22).

First, testimony under Rule 30(b)(6) does not unequivocally bind a corporation. 30(b)(6) testimony does not preclude the introduction of all other evidence the relates to the designee's testimony, inconsistent or not. See *Coupled Prod., LLC v. Component Bar Prod., Inc.*, No. CIV.A. 09-12081, 2011 WL 5039792, at *3 (E.D. Mich. Oct. 24, 2011). A Rule 30(b)(6) designee's testimony is not tantamount to a judicial admission; the testimony may be altered and then may be explained or explored through cross-examination. See also, *Whitesell Corp. v. Whirlpool Corp.*, 2009 WL 3672751, at *1 (W.D.Mich. Oct.30, 2009) ("the Court does not agree that 30(b)(6) testimony precludes the introduction of all other evidence the relates to the designee's testimony, inconsistent or not."); *Little Hocking Water Ass'n, Inc. v. E.I. Du Pont de Nemours & Co.*, No. 2:09-CV-1081, 2013 WL 1791083, at *11 (S.D. Ohio Apr. 26, 2013) 30(b)(6) testimony is not "tantamount to a judicial admission" and "does not unequivocally bind" the corporation to the exclusion of other evidence that may explain or explore that testimony.).

Second, Plaintiff cites no authority to impose upon Defendants facts "taken as established," which are tantamount to a judicial admission, and would unequivocally bind Defendants based upon the City's 30(b)(6) designee's failure to read Plaintiff's counsel's mind and have an answer to every question posed by Plaintiff's counsel on the broad topic of the City's use of facial recognition technology. The City's four designees on this topic answered hundreds of questions over the course of around twelve hours of questioning.

When a requesting party has described with reasonable particularity the matters on which examination is requested. A 30(b)(6) deponent should be reasonably well prepared for a deposition. A deponent is not required to memorize "*any* fact potentially relevant to the described topic known by any employee of the corporation." *Banks v. Off. of the Senate Sergeant-At-Arms*, 241 F.R.D. 370, 373 (D.D.C. 2007).

Plaintiff presents no similarly situated case where a court ordered the kind of relief Plaintiff seeks. The Sixth Circuit employees a four-part test to ascertain the propriety of sanctions.

> The first factor is whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault; the second factor is whether the adversary was prejudiced by the party's failure to cooperate in discovery; the third factor is whether the party was warned that failure to cooperate could lead to the sanction; and the fourth factor in regard

5

to a dismissal is whether less drastic sanctions were first imposed or considered.

*Freeland v. Amigo*, 103 F.3d 1271, 1277 (6th Cir. 1997).

In this case, Defendants did not fail to cooperate in discovery. Defendants produced witnesses who answered hundreds of questions over a dozen hours on a topic that has no bearing on this lawsuit – the City's use of facial recognition technology. This case does not involve the use of facial recognition technology by the Detroit Police Department. This case involves an investigative lead generated by the Michigan State Police. Plaintiff has not suffered any prejudice by the City's production of four witnesses to testify for twelve hours on an irrelevant topic. The court has not issued any warning to the City that it was on the verge of any sanction, let alone the extreme sanctions Plaintiff seeks. No factor in this analysis supports the imposition of any sanction against any of the Defendants.

Plaintiff seeks the following unjustified and extreme sanctions that it be "taken as established that":

1. "The Detroit Police Department began making facial recognition search requests to the Michigan State Police on May 15, 2014, and began directly using the Michigan State Police's facial recognition search platform to run facial recognition searches on September 16, 2014."

6

First, this is irrelevant to Plaintiff's claims in this case. Second, Plaintiff's 30(b)(6) notice did not describe with particularity that it was seeking this information. There is no basis to judicially establish this "fact."

2. In March 2019, the facial recognition platform and algorithms utilized by the Detroit Police Department were identical to those utilized by the Michigan State Police at the time, and the Department therefore had knowledge of how that platform and those algorithms were utilized by the Michigan State Police.

Again, this is irrelevant to Plaintiff's claims in this case. Second this "fact" is ambiguous, and Plaintiff's 30(b)(6) notice did not describe with particularity that it was seeking this information. There is no basis to judicially establish this "fact."

3. In 2019, the Detroit Police Department's Crime Intelligence Unit would knowingly pass poor quality probe images to the Michigan State Police to conduct facial recognition searches despite knowing that the Michigan State Police used the same facial recognition platform and algorithms, and DPD CIU personnel would not inform (nor were they required to inform) Department investigators of the basis for this decision.

This is in direct contradiction to Rathe Yager's testimony. Yager was the analyst who forwarded the image from the Shinola investigation to the Michigan State

7

Police. (ECF 50-16).  He testified that he does not know what technology the Michigan State Police employed.  (ECF 50-13 46-15:20, 48:1-9).  Most importantly for this case, Ms. Coulson of the Michigan State Police testified that the image supplied by Yager in this case was suitable for facial recognition analysis and she was confident that the she prepared a useful investigative lead based upon substantial morphological similarities.  (**Exhibit 2** 41:25-42:4, 33:12-34:9).  Ms. Coulson had the investigative lead reviewed by a peer who concurred in her analysis. (Id 36:10-38:3).

Additionally, this is irrelevant to Plaintiff's claims in this case and Plaintiff's 30(b)(6) notice did not describe with particularity that it was seeking this information. There is no basis to judicially establish this "fact."

4. At some point in the last two years, the Detroit Police Department has stopped performing facial recognition searches using its own system and has instead chosen to utilize the Michigan State Police's system because the Department's own facial recognition system did not provide any unique advantage or functions beyond those available to the Michigan State Police's system.

8

This is largely consistent with the testimony of John Fennessey and Stephen Lamoreaux, but they answered questions regarding these topics and there is no basis to judicially establish this "fact."

5. In 2019, as today, the Detroit Police Department's Crime Intelligence Unit knew that the Michigan State Police employed multiple facial recognition algorithms and knew that the Michigan State Police conducted facial recognition searches using a database that included both current and former driver's license photos, but took no steps to verify whether a facial recognition investigative lead returned by the Michigan State Police was selected by more than one algorithm or involved the suspect's current driver's license photo.

This is largely consistent with the testimony of John Fennessey, Stephen Lamoreaux, and Nathan Howell, but they answered questions regarding these topics, this is irrelevant to Plaintiff's claims in this case, and Plaintiff's 30(b)(6) notice did not describe with particularity that it was seeking this information. There is no basis to judicially establish this "fact."

6. When the Detroit Police Department began running facial recognition searches through its contract with DataWorks Plus, the Department's matching database contained 500,000 images of faces.

9

This is largely consistent with the testimony of John Fennessey, and Stephen Lamoreaux, but they answered questions regarding these topics, this is irrelevant to Plaintiff's claims in this case, and Plaintiff's 30(b)(6) notice did not describe with particularity that it was seeking this information. There is no basis to judicially establish this "fact."

7. The Detroit Police Department does not know, and has not at any time known or taken steps to learn, the confidence threshold set in the DataWorks Plus facial recognition platform or the algorithms it has used or currently uses.

Again, this is irrelevant to Plaintiff's claims in this case since the Detroit Police Department did not perform the facial recognition analysis in this case. Additionally, Plaintiff's 30(b)(6) notice did not describe with particularity that it was seeking this information. There is no basis to judicially establish this "fact."

## Conclusion

Plaintiff's frivolous motion satisfies none of the requirements for the relief he seeks and should plainly be denied.

**WHEREFORE,** Defendants request that this Court deny Plaintiff's motion.

Respectfully submitted,

By: /s/ Patrick M. Cunningham
PATRICK M. CUNNINGHAM (P67643)
City of Detroit Law Department
Attorney for Defendants
Coleman A. Young Municipal Center
2 Woodward Avenue, Suite 500
Detroit, MI 48226 (313) 237-5032
cunninghamp@detroitmi.gov

DATED: July 7, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on July 7, 2023, I electronically filed the foregoing with the clerk of the Court using the ECF system, which will send notification and a copy of such filing to the attorneys of record with the court.

/s/ Patrick M. Cunningham

11